IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE SISCO and | : | |
| RODNEY SISCO, her husband, | : | CIVIL ACTION NO. **3:CV-07-0347** |
| | : | |
| Plaintiffs | : | Magistrate Judge Blewitt |
| | : | |
| v. | : | |
| | : | |
| CLEVELAND CONSTRUCTION, | : | |
| | : | |
| Defendant/ | : | |
| Third-Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| INTEGRITY BUILDERS OF INDIANA, | : | |
| INC., | : | |
| | : | |
| Third-Party Defendant, | : | |
| | : | |

**MEMORANDUM AND ORDER**

**I. Background.**

On February 23, 2007, Plaintiffs Jacqueline Sisco and Rodney Sisco, her husband, filed a Complaint against original Defendant, Cleveland Construction ("CC"). (Doc. 1). Plaintiffs allege that on June 28, 2005, while Jacqueline was working at a Wal-Mart Store in West Fall Township, Milford, Pike County, Pennsylvania, she tripped and fell (while exiting the store) in a store stairwell on a power tool cord left laying across the stairwell by Defendant CC. Defendant CC was hired as general contractor by Wal-Mart to perform renovations at the store. Plaintiffs allege that as a result of Jacqueline's fall, she suffered serious and permanent injuries. (Doc. 1, p. 2). The original

Complaint was filed in federal court based on diversity jurisdiction under 28 U.S.C. §1332.[1] On May 23, 2007, Defendant CC filed its Answer with Affirmative Defenses to Plaintiffs' Complaint. (Doc. 5).

On September 13, 2007, Defendant CC filed a Motion for Leave to File a Third Party Complaint against Integrity Builders of Indiana, Inc. ("IBI"), one of the subcontractors hired by Defendant CC for the Wal-Mart renovations. (Doc. 13). On September 14, 2007, the Court granted Defendant CC's Motion. (Doc. 14).

On September 17, 2007, Defendant CC filed a Third Party Complaint against IBI, named as the Third-Party Defendant ("TPD"), pursuant to Fed.R.Civ.P. 14 and Local Rule 14.1, M.D. Pa. (Doc. 15).[2] On December 6, 2007, TPD IBI filed a Motion to Dismiss the Third Party Complaint against it pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). (Doc. 19). TPD IBI simultaneously filed its Brief in support of its Motion, as required by Local Rule 7.5, M.D. Pa. (Doc. 20). On December 17, 2007, Defendant CC filed its Response to TPD IBI's Motion to Dismiss and its opposition Brief

---

[1] We note that Pennsylvania law applies to Plaintiffs' claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Schlegel v. Wilson-Cook Medical, Inc.*, 2007 WL 465528, * 3, n. 3 (M.D. Pa.).

[2] A Joint Case Management Plan ("JCMP") was filed by the original Plaintiffs and original Defendant on July 17, 2007, and the Court set a Joint Case Management Conference ("JCMC") for September 18, 2007. (Docs. 9 and 12). By Order of September 14, 2007, the Court granted Defendant CC's Motion for Leave to File Third Party Complaint and canceled the September 18, 2007 Joint Case Management conference until further order of the Court. (Doc. 14). The Court then set a JCMC after it decided IBI's Motion to Dismiss the Third Party Complaint. (Doc. 25).

2

to said Motion. (Docs. 21 and 22). TPD IBI's Motion to Dismiss the Third Party Complaint was ripe for disposition.[3]

On March 10, 2008, the Court issued a Memorandum and Order and directed, in pertinent part, as follows:

> 1. Third Party Defendant IBI's Motion to Dismiss CC's Third Party Complaint against it **(Doc. 19)** is **DENIED.**
>
> 2. Third-Party Defendant IBI shall file its Answer to CC's Third Party Complaint against it within **ten (10) days** of the date of this Order.

(Doc. 23). *See also Sisco v. Cleveland Const.*, 2008 WL 648916 (M.D. Pa.).

On March 31, 2009, TPD IBI filed its Answer with Affirmative Defenses to CC's Third Party Complaint against it. (Doc. 24).

The Court then allotted sufficient time for discovery. On May 18, 2009, TPD IBI filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, with attached exhibits, Ex. A, Richard York deposition transcript, and Ex. B, Jerry Wancho deposition transcript. (Docs. 30, 30-2 and 30-3). TPD IBI filed its support Brief on May 26, 2009. (Doc. 31). On June 1, 2009, Defendant CC filed a paragraph-by-paragraph response (¶'s 1.-45.) to TPD IBI's Summary Judgment Motion. (Doc. 32). On June 8, 2009, Plaintiffs filed a paragraph-by-paragraph response (¶'s 1.-45.) to TPD IBI's Summary Judgment Motion, as well as a Brief in opposition to TPD IBI's Summary Judgment Motion, with attached exhibits, Ex. A, a copy of Defendant CC's Supervisor's Incident Report

---

[3]The original Plaintiff and the original Defendant, in their July 18, 2007 JCMP, consented to proceed before the undersigned United States Magistrate Judge, and the District Court entered an Order on July 10, 2007, reassigning this case to the undersigned for all matters pursuant to 28 U.S.C. § 636(c). (Doc. 9, p. 3 and Doc. 10).

regarding Plaintiff Jacqueline Sisco's June 28, 2005 fall down the stairs at Wal-Mart, and Ex. B, portions of Wancho's deposition transcript. (Docs. 34 and 35). On June 16, 2009, TPD IBI filed the Affidavit of Daniel Lane, IBI's foreman for the Wal-Mart project, in support of its Summary Judgment Motion. (Doc. 36). Contrary to Local Rule 7.6, M.D. Pa., Defendant CC did not file a Brief in opposition, with legal citation, to TPD IBI's Summary Judgment Motion. As stated, CC only filed an answer to said motion *sans* any legal citation or citation to any evidence. Defendant CC's answer to TPD IBI's Summary Judgment Motion is clearly not an opposition brief.

TPD IBI's Summary Judgment Motion consists of 45 numbered paragraphs and each paragraph from ¶'s 7. through 43. contains a short statement of a fact with a citation to the record to support it. (Doc. 30, ¶'s 7.-43.). Thus, ¶'s 7.-43. of TPD IBI's Summary Judgment Motion reads like a Local Rule 56.1, M.D. Pa., Statement of Material Facts ("SMF").[4] However, the paragraph-by-paragraph responses of Plaintiffs and Defendant CC to TPD IBI's Summary Judgment Motion, even if construed as their responses to IBI's SMF, are improper under Local Rule 56.1 since they do not specifically cite to the record and to contrary evidence with respect to the paragraphs they deny. (Docs. 32 and 34).

---

[4] Contrary to Local Rule 56.1, M.D. Pa., TPD IBI did not file a separate statement of Material Facts in addition to its Summary Judgment Motion, as required.

TPD IBI moves for summary judgment with respect to Defendant CC's Third Party Complaint against it pursuant to Rule 56(c) by arguing that the evidence shows that CC's project manager (York) and site superintendent (Wancho) at the time of the accident, were not aware of any negligence or carelessness by IBI which caused Plaintiff Jacqueline's fall.[5]

## II. Motion for Summary Judgment Standard of Review.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.,*, 477 .S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F.Supp. 314, 320 (E.D. Pa. 1982), *aff'd. mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a

---

[5] Insofar as TPD IBI's instant Brief (Doc. 31, pp. 3-4) rehashes its arguments in support of its Motion to Dismiss Defendant CC's Third Party Complaint against it (Doc. 19), which was denied by the Court (Doc. 23), we do not reconsider these arguments herein. We rely upon our Doc. 23 Memorandum with respect to the issues raised by IBI in its Motion to Dismiss. *See Sisco v. Cleveland Const.*, 2008 WL 648916 (M.D. Pa.). We also note that TPD IBI did not file a Motion for Reconsideration with respect to the Court's Doc. 23 Memorandum.

genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co*., 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## III. Discussion.

TPD IBI states that it is entitled to summary judgment with respect to Defendant CC's Third Party Complaint against it since it is undisputed that it was not negligent and that it did not cause Plaintiff Jacqueline's June 28, 2005 trip and fall.

In its Third Party Complaint against IBI, Defendant CC alleges as follows:

> 7. Prior to June 28, 2005, Defendant, Cleveland Construction had been hired by Wal-Mart to perform various renovations to the property described in paragraph 3 above.

> 8. On or about June 28, 2005, Third Party Defendant, Integrity Builders, Inc., was a subcontractor of Defendant, Cleveland Construction for the renovation project described in paragraph 4 above.
>
> 9. The "cords" on which Plaintiff alleges she tripped were positioned by and under the control of Third Party Defendant, Integrity Builders, Inc.
>
> 10. The alleged incident on June 28, 2005 described in Plaintiff's Complaint, was caused solely by the negligence and carelessness of the Third Party Defendant, Integrity Builders, Inc.
>
> 11. The June 28, 2005 trip and fall and the injuries allegedly sustained by Plaintiff Jacqueline Sisco, were a direct result of the carelessness and negligence of the Third Party Defendant, Integrity Builders, Inc., in that it:
>
>> a. knew or should have known that the Plaintiff, Jacqueline Sisco would traverse said stairwell without knowledge of the power cords and would fail to protect herself from the dangers imposed by said power cords;
>>
>> b. failed to warn the Plaintiff herein or any other pedestrian, of the presence of said power cords as they traversed the stairwell located in the Wal-Mart Superstore on June 28, 2005;
>>
>> c. failed to act as a reasonable and prudent person would have under the circumstances on June 28, 2005.

(Doc. 15, ¶'s 7.-11.).

In its Wherefore Clause of its Third Party Complaint, CC requests that "should Judgment be entered against Answering Defendant [CC], liability for which is strictly denied, Answering Defendant demands Judgment be further entered against Third Party Defendant, Integrity Builders, Inc., by way of contribution and/or full indemnity." (*Id.*, p. 3).

The facts as detailed by TPD IBI[6] reveal that Defendant CC's project manager for the renovations at the Milford Wal-Mart was Richard York, and he supervised the relationship between CC and its subcontractors. TPD IBI was retained by Defendant CC as a subcontractor for steel erection and iron work. TPD IBI was required to follow the safety programs of CC as well as its own safety programs at the site. Defendant CC's lead superintendent at the job site was Jerry Wancho. Wancho along with his assistant superintendents and CC's safety managers were responsible to monitor safety at the site. The location where Plaintiff Jacqueline tripped and fell was the rear of the Wal-Mart building. Plaintiff Jacqueline was exiting a door onto a landing when she tripped on a cable and fell. Wancho stated that the door, upon completion of the work, was to be a fire exit only. The cable over which Plaintiff Jacqueline fell came from a gas power welder machine which was placed outside due to the exhaust fumes from the engine. The cable came through the door and went to the welding which was occurring inside the rear stock room of the Wal-Mart building. This was part of the job for which Defendant CC subcontracted IBI to perform. Wancho stated that during the construction work, if the door (where Plaintiff Jacqueline exited)

---

[6]As mentioned above, only TPD IBI filed a statement of facts, which is contained within its Summary Judgment Motion, Doc. 30, ¶'s 7.-43., and which properly cites to the record for each paragraph. Since Plaintiffs' and Defendant CC's responses (Docs. 32 and 34) to IBI's factual paragraphs contain general denials and a statement that the deposition testimonies relied upon by IBI for support speak for themself, we rely upon IBI's statement of facts which are supported by citation to the specific record. Further, to the extent many of Defendant CC's denials of IBI's facts contain an identical response without any citation to the record, we do not find that these are proper denials as they do not controvert IBI's facts with citation to the record as required by Local Rule 56.1. We also find that the denials of Plaintiffs and Defendant CC to IBI's statement of facts are without support since IBI cites to the record to support them. In any event, we have reviewed the record and find that it largely supports IBI's statement of facts. Insofar as Plaintiffs' opposition brief does cite to specific evidence in record and contains exhibits, we will consider this.

8

had to be opened, he had to ask Wal-Mart management to open it and Wal-Mart would then post one of its employees at the door to stop anyone from entering or leaving the store from that door.

At the time in question, Wancho knew that IBI would have a welding machine with cables running over the landing through the door. Wancho, as part of his practice, would have had to ask Wal-Mart to open the door on the day of the accident, and he knew that the door was to be opened so that IBI could run its welding cables across the landing and through the door into the store's building.

When the accident in question occurred, the rear door was open and welding cables were coming out of the doorway to a gas welder which was outside since it emitted exhaust fumes and could not be inside the store building. Wancho stated that the gas welder belonged to TPD IBI and that IBI's employees were using the welder on the day of the accident. (Doc. 35, Ex. B). Also, CC did not provide any subcontractor at the Wal-Mart project, including IBI, with any safety equipment, and each subcontractor was required to provide their own safety warnings.[7] Wancho also stated that at the accident scene he would not have expected the subcontractor (IBI) to have put up any cones or warning signs or symbols. (*Id.*). Wancho stated that there was nothing used to hold down the cables affixing them to the ground and that there was not any type of plastic guard over the cables. He stated that the welding cables were like electric cords and that they were shielded so that you could step on them.

---

[7]As we noted in our Doc. 23 Memo, the original construction contract between Wal-Mart and CC permitted CC, as contractor, to enter into contracts with subcontractors for portions of the work at the Wal-Mart, and it provided that any subcontractor used by CC was subject to all of the terms and conditions of the contract between Wal-Mart and CC. (Doc. 16, p. 22).

As stated, TPD IBI submitted the June 2009 Affidavit of Daniel Lane, its foreman at the Wal-Mart project. Lane avers as follows:

> 5. Integrity Builders was retained as a subcontractor in the area of welding and related metal work. The areas of work and the type of work required were provided to Integrity Builders by Cleveland Construction.
>
> 6. On June 28, 2005, as part of the work contracted by Cleveland Construction to Integrity Builders, it was necessary to perform welding operations within the interior of the Wal-Mart building.
>
> 7. The welding was performed by electric arc, requiring a gasoline powered generator to be running in an outdoor and safely ventilated area, connected to the welding operation by way of electrical cable.
>
> 8. On or before June 28, 2005, I approached the site foreman for Cleveland Construction, Jerry Wancho, and requested that he obtain the opening of a rear door to the Wal-Mart building so that the gasoline powered generator could be safely placed outside and the cable run through the door to the inside for the welding operations.
>
> 9. In response to my request, either Jerry Wancho or another employee of Cleveland Construction spoke to someone with Wal-Mart who then unlocked and permitted the opening of the door in the rear of the building which exited onto a landing. At all times, Cleveland Construction not only knew of the use of the doorway for the running of the electrical cable, but obtained the necessary permissions from the Wal-Mart Store for its placement through the doorway.
>
> 10. The cable itself was kept to the side and against the wall and away from any direct path of anyone using the landing itself in as safe a manner as possible under the circumstances.
>
> 11. The doorway was the only reasonable and proximate means of running the electrical cable from the gasoline powered generator on the outside to the welding operation inside the building.
>
> 12. At all times it was understood that employees of the Wal-Mart Store, under arrangements with Cleveland Construction, were not permitted to use the doorway for ingress and egress during construction operations, including the use of the doorway for the running of the electrical

10

cable from the outside generator to the inside welding operation.

13. At all times, Integrity Builders was performing its operations in fulfillment of the requirements of Cleveland Construction and with the full knowledge and permission of Cleveland Construction and its supervisory employees at the job site.

(Doc. 36, ¶'s 5. - 13.).

On the day of the accident, Wal-Mart posted its employee, Plaintiff Rodney Sisco (now deceased), Jacqueline's husband, at the door since it had to be opened that day, to make sure that no one went into or out of the door. The entire area near the door was off limits to Wal-Mart employees and customers, and the area was a construction area where Wal-Mart employees were not allowed and only construction workers with proper protective gear were allowed. There were cone barriers and caution tape about 80 feet away from the door which Defendant CC had placed there a couple of weeks before the accident. On the day in question, Wal-Mart posted its employee, Rodney Sisco, at the door since it was a "locked security door," and, on the day in question, the door had to be unlocked and opened so that IBI could put its welding cables through it. Wancho stated that CC had a "zero conflict" policy with Wal-Mart employees and he instructed CC's employees that if they saw a Wal-Mart employee in the construction area, CC's employees should not confront Wal-Mart's employee and should go to him or a CC supervisor to report the matter. Wancho or a CC supervisor would then let Wal-Mart management know of the problem. Prior to the accident in question, CC employees voiced problems to Wancho about Wal-Mart's employees being in the construction area where they were not supposed to be.

Wancho stated that on the day of the accident, after IBI ran its welding cables through the rear landing and door, Plaintiff Jacqueline should have exited the building through the rear

11

receiving door which also had a posted Wal-Mart employee there when it was opened, including for purposes of taking trash out to the dumpster. The record indicates that on the day of the accident, Plaintiff Jacqueline, who was employed by Wal-Mart as a maintenance worker, was taking out trash through the construction area to the dumpster. (Doc. 35, Ex. A). Prior to the accident and during the construction, Wancho did not think any Wal-Mart employee had used the door in question to take out trash to the dumpster.

On June 28, 2005, at about 11:15 a.m., Plaintiff Jacqueline was taking out trash to the dumpster, and she went through the construction area to the door where IBI had run the welding cables and where Rodney Sisco was posted. While exiting the doorway, Plaintiff Jacqueline tripped on the welding cables being utilized by IBI, and she fell down the stairs (about 48 inches) and was injured. Plaintiff Jacqueline was taken from the scene *via* ambulance. (Doc. 35, Ex. A).

Following Plaintiff Jacqueline's accident, Jim Wetzel, a superintendent for CC at the Wal-Mart construction project, completed a Supervisor's Incident Report. (Doc. 35, Ex. A). Wetzel's supervisor was Wancho. (*Id*.). Wetzel did not find that any of CC's safety rules or company rules were violated on the day of the accident. (*Id*.).

As Lane's Affidavit indicates, there is no dispute that IBI ran the welding cables through the doorway where Plaintiff Jacqueline tripped and fell, and that IBI had to do so to perform its welding operations inside the store. There is no dispute that both Wal-Mart and CC knew IBI had the welding cables running through the door to the welding operations.

In *Penn National Ins. v. HNI Corp.*, 482 F.Supp.2d 568, 594-595 (M.D. Pa.2007), the Court stated:

> "Under Pennsylvania law, when an injury is done by an "independent contractor," the person employing him is generally not responsible to the person injured." *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 785 (3d Cir.1978). "However, when the relationship between the parties is that of "master-servant" or "employer-employee," as distinguished from "independent contractor-contractee," the master or employer is vicariously liable for the servant's or employee's negligent acts committed within the scope of his employment." *Id.*

In our case, it is clear that the relationship between CC and IBI was that of a general contractor and its subcontractor.

In its response to TPD IBI's present Summary Judgment Motion, Plaintiffs state that the evidence shows IBI was the subcontractor in control of the stairwell area at Wal-Mart where Plaintiff Jacqueline fell, and that IBI was in control of and using the welding cables which caused Plaintiff Jacqueline's fall and injures. Plaintiffs state that the evidence shows that TPD IBI was responsible for the welding cables over which Jacqueline tripped and which caused her fall and injuries. We find that Lane's Affidavit does not dispute these facts. Plaintiffs also state that the evidence shows IBI did not take any steps to warn or guard the cables despite the fact that it was their responsibility to have done so.

In its response to TPD IBI's statement of facts, Defendant CC repeatedly states that Plaintiffs allege IBI was responsible for positioning the welding cables through the doorway and that this act caused Jacqueline's fall and injuries. (Doc. 32). We find that the issue as to which Defendant, if either of them, or both, was the cause of Plaintiff Jacqueline's fall, is in dispute and that the factfinder must decide it.

As the Court stated in *Schlegel v. Wilson-Cook Medical, Inc.*, 2007 WL 465528, * 3 (M.D. Pa.):

> Pursuant to Pennsylvania law, [FN3] a right to contribution arises only among joint tortfeasors (*i.e.*, "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them"). 42 PA.CONS.STAT.ANN. § 8322. The Uniform Contribution Among Tortfeasors Act provides that the right of contribution exists among joint tortfeasors. *Id.* § 8324(a). "Where a defendant has been held jointly and severally liable . . . and discharges by payment more than that defendant's proportionate share of the total liability, that defendant is entitled to recover contribution from defendants who have paid less than their proportionate share." *Id.* § 7102(b.1)(4); *see also Exxonmobile Oil Corp. v. Lucchesi*, No. Civ.A. 03-1625, 2004 WL 1699203 (E.D. Pa. July 29, 2004).

The *Schlegel* Court, 2007 WL 465528, * 3, further stated:

> [T]he Pennsylvania Superior Court stated, "[i]f the tortious conduct of two or more persons causes a single harm which cannot be apportioned, the actors are joint tortfeasors, *even though they may have acted independently,*" Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1028 (Pa.Super.Ct. 2005) (emphasis added); *see also Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa.Super.Ct. 1984), [FN4] A joint tort is "where two or more persons owe to another the same duty and by their common neglect such other is injured." *Neal*, 882 A.2d at 1028. Further, "[m]ost personal injury cases are by their very nature incapable of division." *Id.*; *see also Capone*, 882 A.2d at 1251.

The evidence shows that Defendant CC was contracted by Wal-Mart to perform renovation construction work at its Milford, Pike County, store, and that CC entered into a subcontract with TPD IBI to perform iron and welding work on the renovation project. At the time of Plaintiff Jacqueline's fall, the welding cables upon which Jacqueline tripped and fell were placed in the doorway area by IBI and were being used by IBI. Thus, CC and IBI owed the same duty of care

14

to Plaintiff. *See Schlegel*, 2007 WL 465528, * 3-*4. As stated by the *Schlegel* Court, 2007 WL 465528, * 4, "although third-party Defendants may have acted independently of [the original Defendant/Third-Party Plaintiff], they nevertheless may be considered joint tortfeasors with [the original Defendant/Third-Party Plaintiff]." It is up to the facfinder to decide if Defendant CC and TPD IBI breached a duty of care owed to Plaintiff and if so, whether this breach caused Plaintiff Jacqueline's injuries.

Based upon the above discussed evidence, we agree with Plaintiffs and find that TPD IBI's Summary Judgment Motion should be denied. There are material facts in dispute as to whether Defendant CC and/or TPD IBI were negligent and whether their negligence caused Plaintiff Jacqueline's injuries.

**IV. Conclusion.**

Accordingly, we shall deny TPD IBI's Motion for Summary Judgment with respect to Defendant CC's Third Party Complaint against it. **(Doc. 30).**

An appropriate Order follows.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: February 5, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE SISCO and : | |
| RODNEY SISCO, her husband, : | CIVIL ACTION NO. **3:CV-07-0347** |
| : | |
| Plaintiffs : | Magistrate Judge Blewitt |
| : | |
| v. : | |
| : | |
| CLEVELAND CONSTRUCTION, : | |
| : | |
| Defendant/ : | |
| Third-Party Plaintiff : | |
| : | |
| v. : | |
| : | |
| INTEGRITY BUILDERS OF INDIANA, : | |
| INC., : | |
| : | |
| Third-Party Defendant, : | |
| : | |

## **ORDER**

**AND NOW,** this **5th** day of **February, 2010**, **IT IS HEREBY ORDERED THAT:**

1. Third Party Defendant IBI's Motion for Summary Judgment with respect to Defendant CC's Third Party Complaint against it **(Doc. 30)** is **DENIED.**

2. The Court will schedule a Pre-Trial Conference and, subsequently, will issue an Order setting the trial in this case.

                                                 **s/ Thomas M. Blewitt**
                                                 **THOMAS M. BLEWITT**
                                                 **United States Magistrate Judge**

**Dated: February 5, 2010**